# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA SOSA,<br><br>               Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>               Defendant. | 1:09-cv-00863 GSA<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Cynthia Sosa ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits and supplemental security income pursuant to Title II and Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On June 22, 2009, the action was reassigned to the Honorable Gary S. Austin for all purposes.

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for disability insurance benefits and an application for supplemental security income on December 6, 2005, alleging disability beginning February 1, 2005, as a result of pain in her right knee. AR 50-51. Her application was denied initially and on reconsideration. AR 9, 41-46. Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"). AR 38. ALJ Patricia L. Flierl held a hearing on June 20, 2008 and issued an order denying benefits on August 21, 2008. AR 6-15, 347-366. On August 29, 2008, the Appeals Council denied review. AR 2-5.

**Hearing Testimony**

ALJ Flierl held a hearing on June 20, 2008, in Bakersfield, California. Plaintiff appeared and testified; she was represented by attorney James Yoro and Vocational Expert ("VE") Judith L. Najarian was also present. AR 347-366.

Plaintiff lives with her partner, who works outside the home. AR 362. She was forty-five years old at the time of the hearing. AR 350. She graduated from high school. AR 350

Plaintiff suffers from arthritis. AR 353. As a result, she experiences pain in both knees but the pain in her right knee is chronic. AR 352-356. In November of 2005, Plaintiff had surgery on her right knee to alleviate the pain but the surgery did not help. AR 353, 356. She was prescribed Vicodin and Ibuprofen but she does not always take her medication because it makes her drowsy. AR 356, 361. Plaintiff could not return to her regular work duties due to the extreme pain and she could not take the pain medication at work because it made her "feel groggy." AR 352-353. AR 356. When asked to describe the pain, Plaintiff explained that "[on] different days it's very extreme." AR 356. Plaintiff's arthritis also causes pain and popping in her left shoulder, which prevents her from sleeping. AR 359. AR 359. However, she has not sought medical treatment for this condition. AR 359.

In addition to arthritis, Plaintiff also suffers from diabetes for which she was hospitalized in 2006. AR 355. Hospitalization was necessary to control her diabetes because her medical

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

insurance at Kaiser lapsed and she was unable to obtain medication. AR 354. She was without insurance from March 2006 through November of 2006. AR 355  During this time, Plaintiff applied for Medi-Cal, but her application was denied. AR 362-363.  She did not apply for free insurance through Kern County. AR 363. Plaintiff currently has health insurance through her parents and partner. AR 362. Her diabetic condition is now stabilized through medication. AR 355.

Despite these medical conditions, Plaintiff is sometimes able to clean, cook and maintain the yard. However, she tires easily when doing these chores and her partner completes most of these tasks. AR 361. This is because after ten to fifteen minutes Plaintiff must sit, and after fifteen to twenty minutes, she must stand up. AR 358. Plaintiff's most comfortable position is sitting on her bed in a reclined position with her knee elevated four to five times a day. *Id.*

Plaintiff last worked in 2006. AR 352. She was employed as a merchandise handler with Cere's Logistics, which she worked for eleven years. AR 351-352. This job entailed unloading merchandise from trucks that weighed from fifty to seventy-five pounds. *Id.* She was required to stand or walk most of the day while performing this job, and the use of her arms and hands were necessary in order to lift and carry objects. AR 352. Before she worked for Cere's, Plaintiff packed and lifted Styrofoam at Mobile Chemical. *Id.* Prior to working at Mobile Chemical, Plaintiff worked at an unspecified job that required her to lift and carry twenty to twenty-five pounds across a concrete surface eight to eleven hours a day. *Id.* Plaintiff has always performed physical labor and she does not believe anyone would hire her with all of her physical problems. AR 361. She is wary that even a "sit down type job" would be feasible because she would be required to take pain medication, which would cause her to become drowsy. AR 361-362.

VE Najarian testified that Plaintiff's previous work as a packer, which requires a person to lift twenty to twenty-five pounds is classified as medium two and unskilled. AR 363. Plaintiff's work as a workhouse worker/material handler is classified as heavy three and semiskilled. AR 363. According to Plaintiff's work history, she was required to lift 70 pounds, which is consistent with heavy work. AR 363. Additionally, the VE testified that Plaintiff

worked as a telemarketer/telephone solicitor between 1993 and 1994 which is categorized as sedentary three and unskilled  AR 364.

The VE was asked to assume a hypothetical worker of Plaintiff's age, education, language and work history, who can work an eight hour day, is limited to sedentary work, and requires a sit/stand option.  AR 364.  This individual would be required to stay on task for a number of hours, but would get a break every two hours.  AR 365.  This individual could stand up and continue working, but he or she would have to bend to preform computer work. *Id.*

VE Najarian indicated the hypothetical worker could preform Plaintiff's previous work as a telephone solicitor.  AR 364.  The VE also indicated that this person could also perform other jobs in the national economy including a telephone notation clerk, with 12,688 jobs available in California; a charge account clerk, with 4,292 jobs available in the California; and a document preparer, with 8,507 jobs available in California.  AR 364-365.  When asked to include an additional limitation requiring that the individual take unscheduled breaks for twenty minutes at least two to four times a day, the VE testified that past relevant work and all other work would be eliminated.  AR 366.

In a second hypothetical, the VE was asked to consider the same conditions as the first hypothetical, but a limitation of chronic pain that prevents the individual from working eight hours a day was added.  AR 365.  Considering these additional limitations, VE Najarian indicated that this hypothetical worker could not perform her past work or any other work.  AR 365.

**Medical Record**

The entire medical record was reviewed by the Court.  Those records relevant to the issues on appeal are summarized below.

On February 3, 2005, Dr. Alan Inocentes at Kaiser Permanente administered a steroid injection to relieve the pain in Plaintiff's right knee.  Dr. Inocentes' examination of the right knee revealed mild effusion and tenderness in the medial lateral joint line.  He noted that the Plaintiff was in significant pain, especially with weight bearing, and that the knee showed swelling and redness.  AR 243

On February 9, 2005, Plaintiff was treated in the emergency room at Mercy Hospital for worsening blood sugar related to her diabetes. At that time, Plaintiff's musculoskeletal examination revealed nonspecific mild joint pains. AR 290

On February 25, 2005, a follow-up examination was preformed by Dr. Inocentes. He indicated that the steroid injection did not resolve the pain in Plaintiff's right knee. Plaintiff continued to complain of significant pain with occasional locking. Dr. Inocentes ordered an x-ray and MRI of her right knee. The x-ray showed mild to moderate degenerative joint disease. A.R. 234. The MRI indicated that the "ACL is largely if not completely torn" and that there was "osteophytic lipping of the femur and tibia." AR 235.

On March 19, 2005 Plaintiff was seen by Dr. Anthony Levins, an orthopedic specialist. During the examination, Plaintiff exhibited significant irritability within the patellofemoral joint and a slight amount of effusion, but she demonstrated good range of motion and function. Upon review of the MRI, Dr. Levins felt that the Plaintiff's ACL appeared to be intact. Dr. Levins explained that knee replacement may be necessary at some point, but suggested that Plaintiff wait. He ordered non-steroid anti-inflammatory drugs and prescribed physical therapy. AR 227-228.

On March 24, 2005, Dr. Inocentes indicated Plaintiff's previous pain medication regimen consisting of Darvocet, Vicodin, and Endocet were all minimally effective. Dr. Inocentes' examination revealed that there was minimal effusion, minimal medial and lateral joint line tenderness, but there was a significant increase in pain with flexion and extension. He changed the Plaintiff's prescription for Endocet to Tylenol #4. AR 229.

On May 5, 2005, Dr. Levins administered an injection of Depo-Medrol into the knee. During the examination the Plaintiff expressed that she was unable to go to therapy because of the co-pay, however, she was able to do the home exercises. She experienced "fairly good relief" when the knee was taped, but she could only do this for about two hours, she then had to use a brace which also decreased the pain. AR 225.

1    On September 13, 2005 Dr. Levins discussed options pertaining to continued
2 conservative treatment versus surgical intervention.  Both agreed surgical intervention was
3 necessary. AR 224.
4    On October 17, 2005, Plaintiff had a lab follow-up examination preformed by Dr.
5 Elyzabat Tadros.  X-rays of Plaintiff's shoulder appeared to be normal with no signs of any
6 aliments or injury.  AR 212-213.
7    On November 14, 2005, Dr. Levins preformed an arthoscopy of Plaintiff's right knee with
8 medial and lateral chondroplasty and lateral release.  AR 283-288.  In a surgical follow-up, on
9 November 19, 2005, Dr. Levins reported that the Plaintiff was "doing quite well;" she was
10 walking around and ready for physical therapy.  Plaintiff reported a 30 to 40 percent
11 improvement and demonstrated that she had full extension and flexion to about 100 degrees.  Dr.
12 Levins was surprised to hear that Plaintiff experienced such significant relief of her original
13 symptoms and indicated that he was "very encouraged by her results so far."  He opined that
14 Plaintiff's disability should be extended for at least two months. AR 191.
15    On January 11, 2006, Dr. A. Jing, a state agency physician, reviewed Plaintiff's records
16 and opined that Plaintiff could preform light work with "postural app."   AR 175-182.
17    On April 3, 2006, Plaintiff sought treatment for diabetes at the emergency room of Kern
18 Medical Center.  Plaintiff made no other complaints and her musculoskeletal examination found
19 no abnormalities.  Plaintiff was instructed to exercise.  AR 318-328.
20    On November 3, 2006, Plaintiff was treated for complications related to her diabetes due
21 to high blood sugar at Mercy Hospital.  The emergency room examination indicated that the
22 Plaintiff had normal musculoskeletal strength and tone.   AR 167-169.
23    On January 19, 2007, Lavanya Boba, M.D. reviewed Plaintiff's medical records and
24 affirmed Dr. Jing's decision.  Dr. Boba opined that Plaintiff was only partially credible because
25 Plaintiff's allegations were not fully supported by the medical records. AR 183-185.
26    In a clinic follow-up, on March 23, 2007, Dr. Marina Grozdeva reported that Plaintiff was
27 compliant with her medication, and her diabetes was well controlled.  Plaintiff complained of
28 chronic right knee pain related to mild degenerative joint disease.  Plaintiff was being treated

with Tylenol #3 at the time, but it was not enough to control her pain. The physical examination found no swelling in her extremities but mild osteoarthritis of the right knee. Dr. Grozdeva adjusted Plaintiff's pain medication to Tylenol #4 and Mobic.   AR 138-139

On January 8, 2008, Dr. Grozdeva preformed another examination of Plaintiff.  Plaintiff's chief complaint was an increase in pain over the last two months.  X-rays showed mild degenerative joint disease.   In the examination, Plaintiff exhibited tenderness but no swelling. Plaintiff was prescribed codeine and diclofenac sodium to threat osteoarthritis of the knee.  Dr. Grozdeva indicated that Plaintiff would be referred to an orthopedic surgeon for evaluation and treatment if her pain did not improve.  AR 122-137.

On February 19, 2008, Plaintiff sought treatment for flu like symptoms and was seen by Dr. Shannon Smith.  Plaintiff complained of pain in her muscles.  During the examination, her gait and muscle strength were normal, and no swelling was present.  AR 110-113.

On July 17, 2008, Dr. Levins completed a questionnaire and opined that Plaintiff could lift less than ten pounds, could stand and/or walk less than two hours a day, and could sit less than six hours.  Dr. Levins based his opinion on current x-rays of Plaintiff's knee and unpredictable locking and popping.  Dr. Levins also indicated that Plaintiff required the use of her upper extremities for support.  AR 108-109.

**ALJ's Findings**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since February 1, 2005 and had severe impairments that included: non-insulin dependent diabetes mellitus; arthritis; bilateral degenerative joint disease; and "status post right knee arthroscopy with medial and lateral chondroplasty and lateral release."  AR 11.  Nonetheless, the ALJ determined that none of the severe impairments met or exceeded one of the listing impairments. AR 12.

Based on her review of the medical evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to preform sedentary work except for a sit/stand option. She could lift and carry twenty pounds occasionally, lift and carry ten pounds frequently, could

climb, balance, stoop, kneel, crouch and crawl occasionally, and could stand, walk, and sit for six hours during an eight hour workday.  AR 14

Given this RFC, the ALJ found that Plaintiff was capable of performing her past relevant work as a telemarketer.  In addition, the ALJ ascertained that there were three other jobs in the national economy Plaintiff could perform including a telephone quotation clerk, a change account clerk and a document preparer.  AR 14.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 404.1520(c) and 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) was able to perform her past relevant work as a telemarketer; or in the alternative (5) retained the RFC to perform other jobs that exist in significant numbers in the national economy. AR 11-15.

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence because (1) the ALJ failed to give controlling weight to Plaintiff's treating physician; and (2) the ALJ's credibility determination is erroneous. (Doc. 14 at 6-10.)

## DISCUSSION

### A. Rejection of *Dr. Levins' Opinion*

Plaintiff asserts the ALJ's rejection of Dr. Levins' opinion is contrary to the law because the record does not contain a conflicting examining physician's opinion. Moreover, Plaintiff argues Dr. Levins' opinion is supported by objective evidence and his opinion should be controlling. (Doc. 14 at 6-7.) In reply, Defendant contends that the ALJ may disregard a treating physician's opinion, whether or not that opinion is contradicted, if it is unsupported and inconsistent with the record. It is the responsibility of the ALJ, not the claimant's physician to determine the RFC. Defendant asserts that Dr. Levins' opinion is not supported by the medical record and was properly rejected. (Doc. 16 at 4-6.)

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d at 830. Similarly, the opinion of a specialist about medical issues related to his or her area of specialization are given more weight than the opinions of a nonspecialist. *See* 20 C.F.R. § 404.1527(d)(5). *See also Bunnell v. Sullivan*, 912 F.2d 1149, 1153 (9th Cir. 1990) *aff'd en banc,* 947 F.2d 341 (9th Cir. 1991). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record. *Lingenfelter v. Astrue*, 504 F.3d 1028.

In *Orn v. Astrue,* 495 F.3d 625, the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."' *Orn,* 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician' such findings are 'substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2)

findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

If a treating physician's opinion is not given controlling weight because it is not well supported or because it is inconsistent with other substantial evidence in the record, the ALJ is instructed by Section 404.1527(d)(2) to consider the factors listed in Section 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. 404.1527(d)(2)(i)-(ii). Other factors include the supportablility of the opinion, consistency with the record as a whole, the specialization of the physician, and the extent to which the physician is familiar with disability programs and evidentiary requirements. 20 C.F.R. § 404.1527(d)(3)-(6). Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference." SSR 96-2p; *Orn*, 495 F.3d at 632-633. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p; *Orn*, 495 F.3d at 633.

When evaluating the medical evidence, the ALJ found as follows:

> As for the opinion evidence, the State agency medical consultants concluded that the claimant retains the residual functional capacity to lift and carry 20 pounds occasionally, and 10 pounds frequently and stand, walk and sit 6 hours in an 8-hour workday with occasional climbing, balancing, stooping, kneeling, crouching and crawling.
>
> Orthopedic surgeon, Dr. Levins opined that the claimant could lift and carry less than 10 pounds, stand and walk less than 2 hours and sit less than 6 hours in an 8-hour workday and with no climbing, balancing, stooping, kneeling, crouching and crawling. Very little weight [is] given to Dr. Levins opinion as it is not supported by clinical findings and is not consistent with other medical evidence. For example, right knee x-rays performed in December 2006 showed only mild tricompartmental degenerative joint disease. A medical report in March 2007 indicated mild osteoarthritis of the right knee. Furthermore, the record indicates that the claimant has received minimal right knee treatment since her surgery and has seen Dr. Levins on [sic] a couple of times. The State agency medical opinion [sic] that the claimant can perform light work is given very little weight as they did not have the opportunity of examining the claimant.

AR 14. (internal citations omitted).

Here, the ALJ rejected Dr. Levins' opinion based on insufficient medical evidence in the record, and the fact that Dr. Levins had not seen Plaintiff regularly over the course of her treatment. AR 14. The ALJ further rejected Dr. Levins' assessment because Plaintiff received minimal treatment for her knee since the surgery in 2005. *Id.*

While the Court agrees with the ALJ's assessment that Dr. Levins' opinion is lacking, there is not sufficient medial evidence in the record to support the ALJ's finding the Plaintiff can perform her past work or other work, without further evaluation of Plaintiff's right knee. For example, the ALJ indicates that Plaintiff did not obtain treatment for her right knee. AR 13. However, an evaluations done by Dr. Grozdeva in 2007 and 2008 indicated that Plaintiff was complaining of recurrent right knee pain. AR 122-123, 138-139. Dr. Grozdeva diagnosed Plaintiff with mild degenerative joint disease and mild osteoarthritis. *Id*. In January 2008, Dr. Grozdeva noted that there was minimal lipping along the joint lines medially and laterally, a slight sharpening of the tibial spines, and what appeared to be some narrowing of the patellofemoral joint. AR 122. Dr. Grozdeva indicated that if Plaintiff's symptoms did not improve, she would refer Plaintiff for another orthopedist evaluation. AR 123.

Although Defendant argues that Plaintiff's lack of obtaining treatment is sufficient support for the ALJ's findings, the Court is not persuaded by this argument.[3] The record is clear that Plaintiff has experienced difficulty with her right knee for several years and a comprehensive evaluation of Plaintiff's knee has not been performed since 2005. AR 122-123, 138-139. Despite the fact that Dr. Levins completed an x-ray on July 17, 2008, and examined Plaintiff on that day, the extent of the evaluation is unclear and his recommendation consists of a cursory check-box evaluation. AR 108-109. Nonetheless, he is a specialist and his evaluation should be given deference. *See* 20 C.F.R. § 404.1527(d)(5). *See also Bunnell v. Sullivan*, 912 F.2d 1149,

---

[3] According to the record, Plaintiff was without medical insurance from March 2006 to November 2006. Plaintiff asserts that she was unable to seek medical attention because she had lost her medical insurance. However, Plaintiff regained coverage well before Dr. Grozdeva evaluated Plaintiff's knee in January 2008 and again in March of 2008. While not extensive, Plaintiff did in fact seek medical treatment for her knee prior to Dr. Levins' assessment on July 17, 2008.

1153 (9th Cir. 1990) *aff'd en banc,* 947 F.2d 341 (9th Cir. 1991).  Accordingly, his opinion should not be rejected without further medical evaluation.

The Court acknowledges that it is the duty of the claimant to prove to the ALJ that she is disabled.  20 C.F.R. § 404.1512(a).  To this end, she must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment, and its effect on her ability to work.  *Id.*  However, the ALJ also has a responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports."  20 C.F.R. § 404.1512(d).  If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent the ALJ cannot reach a conclusion, he or she may seek additional evidence from other sources.  20 C.F.R. §§ 404.1512(e); 404.1527(c)(3), see also *Mayes v. Massanari,* 262 F.3d 963, 968 (9th Cir. 2001).

In this case, Dr. Levins' opinion is insufficient because the extent of the examination is unclear and the conclusions are in a checkbox format.  In addition, the ALJ's reliance on Plaintiff's recent doctor's evaluations are misplaced since Dr. Grozdeva's assessment did not fully evaluate the condition of Plaintiff's knee, nor did Dr. Grozdeva fully assess Plaintiff's functioning or limitations.  Under these circumstances, the ALJ had a duty to further develop the record.  Accordingly, the ALJ's did not give specific and legitimate reasons for rejecting Dr. Levins' opinion and the RFC findings are not supported by substantial evidence.  Therefore, the case will be remanded so that the ALJ can order the appropriate orthopedic evaluations and assess the limitations of Plaintiff's right knee.

**B.     *The Credibility Determination***

The Court will not address Plaintiff's credibility regarding her alleged knee pain in light of the Court's decision to remand.  Because the circumstances surrounding the decision to remand are intimately connected to Plaintiff's credibility, any determination of Plaintiff's credibility regarding her knee would be misplaced at this time.   However, the court will proceed with a determination of Plaintiff's credibility as it relates to other alleged aliments.

Plaintiff contends the ALJ's adverse credibility determination is erroneous because the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective complaints. (Doc. 14 at 8-10.) In response, Defendant asserts that the ALJ provided substantial evidence for discounting Plaintiff's testimony concerning the severity of her symptoms. (Doc. 16 at 6-7.)

A two step analysis applies at the administrative level when considering a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Here, Plaintiff suffers from

non-insulin dependent diabetes, bilateral degenerative joint disease, and "status post right knee arthroscopy with medial and lateral chondroplasty and lateral release." AR 11. When making her finding as to Plaintiff's RFC, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. . . ." AR 13. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

In the absence of a finding that a claimant in malingering, an ALJ is required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *Bunnell*, 947 F.2d at 345-346.

In this case, the ALJ made the following findings regarding Plaintiff's credibility:

> In regards [sic] to the claimant's diabetes the record indicates that it has been controlled ever since she obtained insurance and started back on her diabetic medication. Lab tests in January 2007 noted that the claimant's hemoglobin A1C was 5.7. Guidelines from the American Diabetic Association suggest that hemoglobin A1C values at or below 7.0 of total hemoglobin (reference rage 4.2 to 6.7) indicates good control of diabetes.
>
> Weighing all relevant factors, I find that claimant's impairments are not as limiting as she alleges. The record continually shows that her diabetes is well controlled with medication and with following a diabetic diet. The claimant complains of arthritis in her left shoulder but x-rays of the left shoulder were normal. She testified that her left shoulder pops and that she cannot do much with it but she has not seen a doctor yet for it and just takes the pain pills. . . . The record also indicates that the claimant is obese which could very well cause knee pain with weigh bearing. As discussed above about I find that the claimant has not generally received the type of treatment one would expect for a totally disabled individual.

AR 12-13. (internal citations omitted).

Here, the ALJ points to Plaintiff's failure to seek medical treatment for her left shoulder to support her credibility finding. AR 14. Although Plaintiff indicates that she cannot use her shoulder, that it pops, and prevents her from sleeping (AR 359), the ALJ correctly relied on the fact that Plaintiff only takes pain medication and did not pursue medical treatment. AR 13. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ is permitted to consider lack of medical treatment in assessing credibility). *See*, *Flaten v. Sec. of Health and Human Services*, 44 F. 3d 1453, 1464 (9th Cir. 1995) ("ALJ could draw an inference for the general lack of medical care for [impairment]"); *Fair v. Bowen*, 885 F. 2d 597, 603 (9th Cir. 1989) (claimant's failure to assert a reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony"). Moreover, the ALJ notes that x-rays taken in October of 2005 failed to reveal any abnormalities in Plaintiff's shoulder, nor were there any signs of ailments or injury. AR 212-213. While a lack objective evidence alone is not enough to discredit a claimants subject complaints of pain, the combination of a lack of objective evidence and Plaintiff's failure to seek out medical attention, can be used as factors to cast serious doubt upon Plaintiff's credibility. *See Smolen*, 80 F.3d at 1284. *See also Orn v. Astrue*, 495 F.3d 625, 638 (2007). Accordingly, the ALJ provided clear and convincing reasons for her credibility finding. *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d at 834.

## REMAND

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859

F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

In this case, the Court finds that the case should be remanded to allow the ALJ the opportunity to review the medical evidence and order additional evaluations on Plaintiff's right knee as outlined above.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Cynthia Sosa and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 20, 2010**                    **/s/ Gary S. Austin**
                                                                      UNITED STATES MAGISTRATE JUDGE